CLAY v. HAVA *et al.*

[89 South. 665, No. 21870.]

EASEMENTS. *Right of way held to give neither party privilege to close same by gate.*

The mere right of abutting landowners to use a thirteen-foot passageway for ingress and egress purposes gives neither one the privilege to close the passageway by a gate, and where it is not shown that gates across it were erected and maintained adversely and continuously for statutory period, no right to obstruct the passageway was acquired, and it must remain open for free use by abutting owners.

APPEAL from chancery court of Hancock county.
HON. V. A. GRIFFITH, Chancellor.

Suit by Emma A. Clay against Adrian Hava and another. From a decree therein, plaintiff appeals. Reversed in part, and affirmed in part.

*Gex & Waller*, for appellant.

The court below was right, because under the facts in this case, even though the road had not been conveyed to Miss Clay, yet she purchased according to the plat and according to deeds which had reserved this road for the use of her lot, and not for the use of other lots. We wish to refer the court to a few of the unbroken line of authorities showing that this holding of the lower court was correct.

Cyclopedia of Law and Procedure, Vol. 14, p. 1134: "Where an easement is annexed as appurtenant to land it passes as an appurtenance with a conveyance or devise of the dominant estate and need not be specifically mentioned in the deed or will." "A pure easement can exist only as an appurtenance to land, and it follows that an existing easement cannot be severed from the land to which it is appurtenant and made the subject of a separate grant or a revision."

(Ill. 1886) "When the owner of property has made reference to a private plat showing an alley or other easement, and assured the purchaser that such plat will be recorded, and the purchaser invests his money on the faith of such representations, the grantor will be estopped to deny the existence of such easement. *Cinak* v. *Keeker,* 7 N. E. 111.

(Ill. 1894) "Where land is platted by the owner into lots, blocks, streets and alleys, and lots are sold by him with reference to the plat, the purchasers acquire as appurtenant to the lots, the right to have the adjoining streets and alleys kept clear of obstructions both on and above the ground. *Field* v. *Ballind,* 37 N. E. 850.

(Mass. 1872) "A conveyance of land by deed bounding it on a private way not defined in the deed, but shown upon a plan referred to therein, and recorded in the registry of deeds, estops the grantor to deny the existence, not only of that way, but of any connecting ways, represented on the plan, which will enable the grantee to reach public ways in any direction as far as the grantor's title extends. *Fox* v. *Union Sugar Refinery,* 109 Mass. 292.

(N. Y. 1869) "M, who owned a parcel of land in a village, having laid off the same into lots, streets, etc., including an alleyway designated as 'S Alley,' and duly filed a map thereof, sold certain of the lots to C, describing them in the deed of conveyance as bounding upon S Alley, and referring to them by the number by which they were designated on the map. M, subsequently sold S Alley to J, who fenced it in. In this case it was held; that the refer-

ence to the map made the same a part of the deed, and operative, in connection with the description in the deed, to convey to C, a right of way over S alley, as appurtenant to his grant, and that neither M nor J had a right to fence in S Alley and exclude C from the enjoyment thereof. *Cox* v. *James,* 59 Barb. 144, affirmed in (1871) 45 N. Y. 557.

(N. Y. 1871)   Landowners caused their lands to be divided into lots for building purposes, and a map to be made, upon which the lots were designated by numbers, and a strip of land adjoining them designated as an alley.   The court held in this case, that a conveyance of one of the lots describing it by its number on the map, and specifying its boundaries as abutting on the line of the alley as laid down on the map, gave the grantee a right of way over the alley to the rear of his lot, as against the grantors and a subsequent grantee from them of the alley.   *Cox* v. *James,* 45 N. Y. 557.

(Tex. 1888)   Evidence that the owner of land platted in and conveyed the lots with reference to an alley, and that subsequent conveyances of the lots were executed, designating and referring to such alley, is sufficient to show a dedication of the land occupied by the alley, as between subsequent grantees of the lots, whether or not there has been a dedication to public use.   *Wolf* v. *Brass,* 72 Tex. 133, 12 S. W. 159.   See, also, the following:   *Baxter* v. *Arnold,* 114 Mass. 577; *Foote* v. *Man. Ry. Co.,* 12 N. Y. Sup. 516; *Rexford* v. *Marquis,* 7 Kans. 249; *Combs* v. *Steward,* 49 Ky. 463; *Burke* v. *Wall,* 29 Am. Rep. 316; *Bussell* v. *New York Cent. R. Co.,* 23 N. Y. 61; *Haight* v. *Littlefield,* 41 N. E. 696; *Ross* v. *Thompson,* 78 Ind. 90; *Teachout* v. *Capital Lodge I. O. O. F.,* 104 N. W. 440; *Scott* v. *Moore,* 37 S. E. 342; *Agnew* v. *Paynee City,* 113 N. W. 236; *Brown* v. *Oregon Short Line R. Co.,* 102 Pac. 740; *In Re Barkhausen,* 124 N. W. 649. But whether Miss Clay owns the title to this road in fee simple or whether it is merely appurtenant to lot 89 and runs with her title, in either event Dr. Hava by

express reservations in his and other deeds heretofore referred to, was precluded from the use of this road.

The court erred in holding that the owners of lot "A" had acquired the right to have and maintain a gate at the southeast end of the road. The court held that the respondents had acquired the right to maintain a gate at the southeast end of the road by prescription or adverse possession. We submit, if the court please that there is not the slightest ground in this record to sustain this holding of the court.

In the first place there could be no adverse possession of this roadway, in the second place, adverse possession to be available in Mississippi of any sort of land must be continuous, open, notorious and hostile possession under color of title for ten years or more, and if there were no color of title then it must be shown that there has been an adverse enjoyment or use of the road from time immemorial or for such a great length of time that the law presumes that a grant or deed once existed, which could never be less than twenty years.

Under the common law, prescription did not run in such cases under twenty years, and this court formerly held that twenty years was the length of time before the use could ripen into title by prescription, and that where the use was merely a permissive use, or a use by the consent of the owner, that prescription would not run. *Lanier* v. *Booth et al.,* 50 Miss. 410.

But in recent cases it has been held by this court that a title to a right of way over land exercised adversely and under color of right would ripen into title by prescription within ten years.

This was held in the case of *Warren County* v. *Mastronardi,* wherein the court used the following words: "As a title to land is gained by ten years' actual, adverse possession, the use of a right of way over land for a like period, exercised adversely and under color of right, would constitute a good way over land, in order to ripen into a title by prescription, must be under color of right, and the privilege exercised must be such as to expose the party assert-

ing such right of way to an action if he wrongfully exercised such right. Washburn on Easement (4 Ed.), 152 153, 27, 28; *Lanier* v. *Booth,* 50 Miss. 410.

"We do not regard the traveling public as asserting such privilege in this case. Surely they had no intention of inviting Cameron to sue them, and indeed, it is difficult to see how he could have maintained an action against them collectively or distributely."

This court has recently held; opinion by chief Justice SMITH, in the case of *G. & S. I. R. R. Co.* v. *Adkinson,* 117 Miss. 118, that the right to use a roadway might be acquired if the road is habitually used by the public for a period of ten years, where such use is accompanied by evidence other than mere travel thereon. In other words, mere use of the roadway unaccompanied by any color of right is insufficient. This case also holds that travel over the road by mere sufference or permission of the owner is not sufficient to constitute adverse possession or holding. *Warren County* v. *Mastronardi,* 76 Miss. 273, 24 So. 199; *Burnley* v. *Mullins,* 86 Miss. 441, 38 So. 635; *Wills* v. *Reed,* 86 Miss. 446, 38 So. 793.

In the case of *Tegarden* v. *McBean & Kibbe,* 33 Miss. 283, the court held that the uninterrupted use by the public with the permission of the proprietor of part of his land as a roadway for a period of six years will not establish a right to the road by prescription.

See case of *Rylee* v. *State,* 106 Miss. 123. In that case it was shown that this road had been used by the public since time immemorial, or for more than fifty years. That the road had been worked by the board of supervisors, and had been maintained as a highway since the creation of the county of Benton and that under such useage, for such a great length of time prescription would run. This, however, conforming to the other decisions of our supreme court, was on the theory that a grant was presumed to have been made after the laspse of this great length of time and the use of the road during said time.

Surely in view of the holdings of this court it cannot be said that the doctor, having had color of title to this land for only three years, and having owned the lot adjacent to the road for only four years, and whatever limited use that he might have had of the lane being purely through the permission or sufferance of the owner, could not now interpose a claim to use the road on any theory of adverse possession or prescription.

*Carl Marshall,* for appellee.

It is submitted that the chancellor adopted the only solution open when he directed a continued maintenance of gates. At the time of the division in kind between the Fink heirs, previous thereto, and afterwards, the passageway had been used for the benefit of both lots, and fences protected them both. The owners of both lots enjoying the private easement of passage, and the protection of gates being necessary for both lots, surely the solution adopted is legal and equitable. Appellant's counsel seem somewhat confused in that regard, but the court will please recall that the passageway here is not a public street. It is a private easement in favor of the owners of lot eighty-nine (89), reserved as such out of the grant to Miss Caroline Fink. It is the law that the owners of the private easement of passage must use it in such a way as to prevent injury from trespassing, depredations of animals, etc., and the learned Chancellor merely applied this rule to the facts of the case. 9 R. C. L. Easements, section 53.

Whether, in a case involving a private right of way, as in the case at bar, the right of way shall be fenced at each end and gates maintained, depends upon the circumstances of the property at the time of the grant, and the use to which the property was then and afterwards put, the nature and situation of the property itself, and the manner in which the easement is to be used. The learned court, after hearing the testimony which clearly justified the conclusion reached, held that such circumstances existed in this case

as to make it reasonably necessary and proper that both ends of this passageway should be closed to prevent injury to the adjacent property.   The ruling that the appellee Dr. Hava, should maintain a gate at the front street end of the passageway by which his lot was expressly bounded, and shown upon the plat by reference to which his lot was described, the passageway being a private way between owners of these lots and never dedicated to the public, he should at his own expense maintain the gate used by him since he had no right to use the passageway, to enter the private domain of lot eighty-nine (89) owned by the appellant. The ruling that the appellant, Miss Clay, should maintain a gate at her end of the passageway simply meant that the circumstance of the case proven at the trial showed that a fence had always been there for the protection of the property and was reasonably necessary to protect the property, and that if the appellant desired to use the passageway by going through her fence she should maintain a gate in the fence which she should keep closed when it was not being used.   This was the whole case, and it is submitted that the conclusion reached by the learned court was entirely proper and sustained by the proof.   *Griffin* v. *Gilchrist,* 29 R. I. 200, 69 Atl. 683; *Truax* v. *Grgory,* 196 Ill. 83, 63 N. E. 674; *Connery* v. *Brooks,* 73 Pa. 80; *Boyd* v. *Bloom,* 152 Ind. 152, 52 N. E. 751; *Methodist-Protestant Church* v. *Laws,* 7 Ohio C. C. 211; *Maxwell* v. *McAtee,* 48 Am. Dec. 409; *Amondson* v. *Severson,* 37 Ia. 602; *Brill* v. *Brill,* 102 N. Y. 511, 15 N. E. 538.

It seems to us to be entirely proper and right for this appellant to be required to maintain a gate to prevent injury to the appellees' property if she desired to use this easement of passage, and for the appellees to maintain such gate at their end to prevent injury to their own property and to the property of appellant if they desired to use the easement, since the protection of fences existed, according to the proof at the time of the division in kind between the Fink Heirs, and long afterwards, and the parties are presumed to have dealt with these conditions as

they found them. To meet just such situations the court of equity is designed.

As to the correctness of the chancellor's holding on the question of prescription, the court is respectfully cited to the facts appearing in the transcript to the record, which cearly justify the conclusion reached. As to color of right or title, the plat of the Fink subdivision and the various deeds were obviously sufficient and the proof showed that the fence and the front gate of the passageway had always been maintained.

The result attained in the trial below being clearly legal and suitable, by whatever reasoning the learned chancellor arrived at it, we respectfully ask that the decree appealed from be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is a suit in chancery by the appellant, Miss Emma A Clay, against Dr. Adrian Hava and another, to remove cloud upon title and to perpetually enjoin Dr. Hava from closing by a gate or otherwise, a thirteen-foot passageway used as a road or alley between the land of appellant and appellee. The passageway abuts on, and runs in a southeasterly direction from, lot 89, owned by the appellant, and also borders on the west side of appellee's land, to Front street, which street runs parallel with the beach of the Gulf of Mexico.

The chancellor decreed, on the hearing, that the said thirteen-foot strip was reserved by deed of the grantors as a passageway for the use of the adjoining landowners, and that the appellant should have the use of said passageway, for ingress and egress purposes, from her premises to said Front street, but that the appellant be required to maintain a gate at the point where the passageway intersects her land, and that the appellee, Dr. Hava, should maintain a gate at the southeast end of the said passageway on Front street. The decree also cancels a certain deed as a cloud upon the right of appellant to use said passageway.

The appellant complains here that the lower court erred in not decreeing that the title to the passageway was wholly and exclusively in appellant, and that it was also error for the court to decree that appellant should maintain a gate in the passageway where it joins her land, and that the appellee, Dr. Hava, maintain a gate at the southeast end. of the passageway where it intersects sects Front street. The right and requirement to maintain the gates was decreed by the chancellor on the ground of prescription or adverse possession by the appellee, Dr. Hava; that is, it seems that the chancellor held that the gate at the southeast end of the passageway and the gate at the northwest end had been established and maintained adversely by Dr. Hava and his predecessors in title for more than ten years, and for that reason had acquired the right to maintain the gates and thus close up the passageway at the two ends mentioned.

After a careful consideration of this record we have come to the conclusion that the chancellor was in error in holding that the right to maintain the gates had been acquired by adverse possession. We have searched the record in vain to find any substantial proof tending to show that the gates were maintained adversely or that they were not permissive, or for what continuous length of time they had been established across this passageway. In fact, if the record tends to prove anything with reference to these essentials of adverse possession, which must appear affirmatively, it indicates that the closing of the passageway by the gates in the years past was permissive, therefore no right by prescription or adverse possession was acquired by the appellee, Dr. Hava. And to this extent we reserve the decree of the chancellor, and order here that the gate at the southeast end of the passageway on Front street shall be removed, and the appelle perpetually enjoined from erecting any obstacle in the passageway or interfering in any manner with its free and open use by all of the landowners abutting on the passageway, and that the appellant shall not be required to maintain a gate at the northwest end of the passageway

where it intersects her land, lot No. 89, but that she may or may not, in her discretion, erect a gate at this point. The decree of the chancellor in all other respects is correct, and is affirmed.

The solution of the trouble by the decree of the chancellor may have been the best to bring about peace between neighbors, and this court would not be inclined to disturb the decree, nor question its wisdom, if it were not so plain that to affirm the decision would be to go contrary to the settled law of property rights.

*Reversed in part, and affirmed in part. Judgment here.*