SMITH, Justice.
This is an appeal by Leon Berry from a decree of the Chancery Court of Washing *874 ton County adjudging him to be guilty of civil contempt of that court and requiring him, as a consequence, to pay damages to appellees, Young W. Harvill and Johnnie G. Harvill.
Berry had brought suit against the Har-vills in January, 1965, in the Chancery Court of Washington County, -asking that they be enjoined from erecting a fence along and upon that part of former Highway Number One contiguous to their property on the west. The Harvills answered, alleging that the former highway had been abandoned, actually and formally, and that, as a result of such abandonment their property extended on the west to the center line of the old highway. They also filed a cross-bill against Berry praying that he be enjoined from “entering upon” their property without their consent.
Following a trial of the issues in that case the chancellor found as a fact that the old highway actually had been abandoned, and that consequently the Harvills owned the east half of the old right-of-way adjacent to their property. A decree was entered: (1) dismissing Berry’s original bill for an injunction prohibiting the building of the fence and (2) enjoining Berry “from entering upon” the Harvills’ part of the old highway “without their (the Har-vills’) consent.”
Sometime afterward, (the time for appeal having expired), in a conversation with Berry, Mrs. Harvill informed him that they intended to erect a fence along their west boundary, which would enclose the east portion of the old highway. Berry responded: “You will not fence, I will sue before you do that. You just try it and I will sue you, and, will demand a jury, period. I will not just have a hearing before a judge.”
Two days after this conversation had taken place, the. Harvills wrote Berry informing him that they intended to build the fence and that he was not to enter upon or use their portion of the old highway after September 15, 1967.
The Harvills contracted with Magnolia Fence Company to erect the fence, and on October 7, 1967, a crew came to the site and began work. At this time Berry came along, and inquired of the workmen whether a fence was being erected. On receiving an affirmative answer, he informed the job foreman: “You will be involved in a lawsuit if you do.”
When Mrs. Harvill arrived on the scene shortly afterward and was told of Berry’s statement she instructed the workmen to discontinue the work for the time being. It was after this incident that the Harvills filed their petition in the Chancery Court of Washington County entitled “Petition To Enforce Final Decree.” This petition reviewed the course and result of the earlier litigation between the parties and prayed that Berry be adjudged to be in contempt of the former decree, alleging that his “action in threatening workers hired by petitioner to erect said fence constitutes contempt of the decree of this court.” The petition also sought damages from Berry and prayed that he be permanently enjoined from “interfering in any way, directly or indirectly, with petitioner’s use of their property. * * * ”
A trial was had upon the petition and Berry’s answer thereto which resulted in the entry of a decree adjudging: (1) that Berry had sought in the former suit to enjoin the Harvills from erecting the proposed fence on their west boundary and that his bill had been dismissed with prejudice; (2) that Berry’s action, in threatening a lawsuit constituted “a contempt of the final decree theretofore entered in this cause dismissing the original bill for an injunction to prevent petitioners (the Har-vills) from erecting said fence.”
For this contempt, the court ordered Berry to pay the Harvills $130.00 actual damages and $250.00 punitive damages and directed that “ * * * Leon Berry should be, and he hereby is permanently enjoined from interfering in any way directly or *875 indirectly with petitioner’s use of the prop-
It is from this decree that the present appeal has been prosecuted by Berry.
The procedure adopted by the Harvills for the enforcement of the former decree is apparently that discussed in Griffith, Mississippi Chancery Practice section 667 (2d ed. 1950). There it is stated:
When a party has been commanded by a decree or order personally to do or refrain from doing a specified act and he disobeys the mandate, the practice is to file in the cause a motion supported by affidavit, or preferably a verified petition, clearly stating the facts, and if filed by a private party that the party has been injured, and how, by the acts constituting the alleged contempt, * * *.
The concluding portion of section 667, supra, is to the effect that in such cases the defendant must answer or appear personally and states further that he may not attack the decree or order alleged to have been disobeyed.
[S]ave only that it may be shown that the decree is void, or else is so obscure and indefinite in its terms that the party could not safely ascertain therefrom what he was required to do.
It is to be noted that the ordering part of the decree in the former suit was twofold; (1) it dismissed Berry’s bill with prejudice and (2) it enjoined him from “entering upon” the Harvills’ land “without their consent.” On this appeal it is pointed out on behalf of Berry that he is not charged with having entered upon or having attempted to enter upon the Harvill land. It is argued, therefore, that the charge that his conduct was contemptuous rests exclusively upon the first proposition that he had, in the former case, by original bill sought an injunction to restrain the Harvills from building the fence and the former decree had dismissed his bill, which made contemptuous his threat of litigation if the fence were built. The former decree made no specific reference to the building of the fence and the injunctive feature of the decree was limited in express terms to restraining Berry “from entering upon” the Harvill property without their consent.
It is argued that Berry’s remarks as to his intention with respect to court action or as to the likelihood that court action would ensue, if the fence were built, were not contemptuous per se and Berry, having disclaimed any contemptuous design or purpose in uttering them, they must be given an innocent construction.
In support of this proposition appellant cites 17 Am.Jur. Contempt § 8.
Intent may become a material question, as where it cannot be said that the only reasonable inference that can be drawn from the alleged contemnor’s conduct is that it was contemptuous, and where the facts are susceptible of two constructions, one of which would amount to contempt and the other not. Thus, it has been held that under these conditions a denial of intent to defy the authority of the court entitled the alleged contemnor to discharge. In a case involving contempt by publication, it has been held that if a defendant in his verified answer denies any contemptuous intent, he must be discharged unless the language used, without the aid of innuendoes, is clear and not susceptible of a construction consistent with innocent intent. * * *
As the present case involves a charge of civil contempt, as defined in Griffith, Mississippi Chancery Practice section 666 (2d ed. 1950), in their petition the Harvills sought damages from Berry and, after adjudging Berry to be in contempt, the chancellor entered a decree awarding them $130.00 actual damages and $250.00 as punitive damages. Griffith, Mississippi Chancery Practice section 664 (2d ed. 1950), Note 73. Also in this latter decree, Berry was enjoined permanently from “interfering in any way directly or indirectly with *876 petitioner’s (the Harvills’) use of the property,” a provision which did not appear in the original decree.
The extent and character of this Court’s review in cases of appeals from judgments for contempt is discussed in Brannon v. State, 202 Miss. 571, 29 So.2d 916 (1947). See also Ballew v. Case, 232 Miss. 183, 98 So.2d 451 (1957) and Evers v. State, 241 Miss. 560, 131 So.2d 653 (1961).
The power of the Washington County Chancery Court to punish for contempt of its orders and decrees is beyond question. However, in the case now before us, after a careful review of the record, we are constrained to conclude that the original decree limited the restraint placed upon Berry by injunction to “entering upon” the Harvills’ land without their consent. Berry did not violate this provision nor is he charged with having done so. His statements, as disclosed by the record, do indicate a rebellious frame of mind with respect to the erection of the fence by the Harvills and the chancellor was warranted in enlarging the injunctive relief to the Harvills by enjoining Berry from interfering with the use of their land directly or indirectly. We pretermit the question of whether an equity court may award punitive damages, except where specifically authorized by statute, and hold that Berry’s remarks, whether threatening or merely predicting litigation, under the circumstances in evidence, were insufficient to constitute contempt, civil or criminal, in view of the terms of the original decree which in express words, restrained him only from “entering upon” the Harvills’ land without their consent. This is not to be understood as implying that future interference on the part of Berry with the erection of a fence by the Harvills may not come within the broader injunc-tive words of the decree appealed from and be punishable as a contempt.
For the reasons stated, the decree appealed from, insofar as it enjoins Berry from interfering directly or indirectly with the Harvills’ use of their land is affirmed. It is reversed and a decree is entered here discharging Berry of the contempt.
Affirmed in part and reversed in part.
ETHRIDGE, C. J., and JONES, BRADY and INZER, JJ., concur.