498 So.2d 1218 (1986)
M. Mikal DUNAWAY, a/k/a Richard Shelton Brown, Patricia Diane Dunaway, Tylertown Bank, Branch of First National Bank of Jackson, Service Finance Corporation of Columbia, Danny Smith, Danny R. Boyd and Angela L. Rushing Boyd
v.
Marilyn R. BUSBIN and Oliver C. Rushing.
No. 56109.
Supreme Court of Mississippi.
November 26, 1986.
*1219 M. Mikal Dunaway, pro se.
Joseph M. Stinson, Tylertown, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This civil contempt proceeding between two adjoining homeowners has arisen from the fact that the parties to the west constructed an eight foot fence and obstructed the access of their neighbors to the east to an 18 foot right-of-way the former having previously been enjoined to leave open and clear for driveway, street and other similar purposes. Beneath the sound and fury emanating from the record and briefs of counsel, the core question before us on appeal is whether the evidence supports a finding that the enjoined parties knowingly violated the previous injunction. We hold that the Chancery Court's adjudication of contempt is supported by substantial evidence and affirm.

II.
M. Mikal Dunaway and Patricia Diane Dunaway, husband and wife, own a tract of land in Tylertown, Mississippi, the southern boundary of which is Holmes Street. Marilyn R. Busbin owns an adjacent tract upon which she lives with her husband, Pete Busbin. The western boundary of the Busbin property is along a line which forms the eastern boundary of the Dunaway property. The Dunaways' residence faces in an easterly direction toward the Busbin property. The Busbin residence faces west toward the Dunaway property.
The deed under which the Dunaways hold title reserves a right-of-way between parallel lines across the eastermost eighteen feet of the Dunaway property. This north-south right-of-way is 100 feet in length. The Dunaways obstructed this right-of-way in consequence of which Marilyn R. Busbin and her predecessor in title brought suit. On August 7, 1984, the Chancery Court of Walthall County, Mississippi, entered its final judgment holding that the Dunaway property was burdened with the eighteen foot right-of-way along its easternmost side, that the right-of-way was dedicated to driveway, street and access uses, and that Busbin had a legal interest in and right to use the right-of-way for those purposes. The Court further adjudged that the Dunaways
have wrongfully obstructed the right-of-way, and that they should be, and are hereby, enjoined to forthwith remove all obstructions therefrom and to keep and leave the same open and clear for its intended use.
The Dunaways filed no motion for a new trial or appeal with respect to the August 7, 1984, judgment, and the same has now become final.
Shortly after entry of the judgment, the Dunaways built the fence which is the subject matter of the instant contempt proceeding. It appears that Mikal Dunaway studied the previous judgment carefully and consulted counsel regarding its meaning. Thereafter he constructed a wooden plank fence some six to eight feet in height along the northern 88 feet of Busbin's western boundary and the Dunaways' eastern boundary. The fence was entirely upon the Dunaways' property, but so is the right-of-way. The fence obstructed access to the right-of-way from the east as is reflected on the exhibit made an Appendix to this opinion. Specifically, this fence prevented the Busbins from direct east-to-west access from their property onto the eighteen foot right-of-way. The Dunaways built a wooden gate at the southern end of the fence. The gate could be opened without inordinate difficulty. The southernmost *1220 twelve feet of the right-of-way in issue remained available to the Busbins for their unobstructed use. Their access to the northern 88 feet of the right-of-way could be obtained only by going through the gate to the south or going around the fence to the north leaving their own property and entering the northern end of the right-of-way.
On August 20, 1984,[1] Busbin filed a motion with the Chancery Court seeking an order holding the Dunaways in contempt for violation of the August 7, 1984, final judgment. The matter came on for hearing before the Chancery Court on September 6, 1984, and on that date the Chancery Court found that, with knowledge of the contents and terms of the prior judgment, the Dunaways
obstructed the right-of-way and the Plaintiffs' [Busbin, et al] access thereto by constructing a wooden fence upon and along the north 88 feet on the east side thereof and wooden gates across the same.
The Chancery Court further found that the Dunaways'
construction of the fence and gates ... was wilful and contumacious and in violation of the terms of the aforesaid final order, ... .
The Dunaways were accordingly adjudged in contempt. The sanction imposed by the Chancery Court was modest. The Dunaways were merely ordered to remove all fences and gates from the aforesaid right-of-way within ten days.

III.
What  and all  this Court has before it this day is an appeal of the September 6, 1984, judgment that the Dunaways are in civil contempt for the construction of the fence and gates and the obstruction thereby caused to Busbins' access to the right-of-way. Much of the argument tendered by the Dunaways, however, goes to the nature of Busbins' rights in the right-of-way. These matters were before the Chancery Court originally and were resolved and adjudicated on August 7, 1984. The Dunaways took no appeal from that order and it has become final. Much of the argument tendered in the brief of the Dunaways is the sort of argument which would have been quite proper on an appeal from the August 7, 1984, final judgment. That argument is quite out of place in the present context where we are concerned solely with whether the Dunaways are guilty of contempt for violation of the final judgment of August 7, 1984.
The objective standards by reference to which the Dunaways' conduct must here be judged no doubt emanate from our positive law regarding the relative rights of parties interested in a right-of-way. Those rights have been reduced to judgment in the form of an injunction, the operative language of which is quoted in Section II above and is our sole referent in the present context.
By analogy, we find in our reports several applications of the "unreasonable interference" standard in the context of pre-injunction right-of-way litigation. See Gano v. Strickland, 211 Miss. 511, 517, 52 So.2d 11, 12-13 (1951) (fence built on common right-of-way held unreasonable interference); Feld v. Young Men's Hebrew Association of Vicksburg, 208 Miss. 451, 459, 44 So.2d 538, 540 (1950) (dominant estate owner's particular use of private right-of-way held unreasonable interference); Clay v. Hava, 126 Miss. 823, 831, 89 So. 665, 666 (1921) (gate constructed on right-of-way held unreasonable interference with adjoining landowner's rights); Board of Trustees of University of Mississippi v. Gotten, 119 Miss. 246, 255-56, 80 So. 522, 523 (1919) (servient owner's placement of gate across of right-of-way held not unreasonable interference).
In addition, Berry v. Harvill, 215 So.2d 873 (Miss. 1968), provides guidance. Berry *1221 originally brought suit against the Harvills seeking to enjoin them from building a fence enclosing the eastern half of an abandoned highway which was contiguous to the western border of their property. The Harvills filed a cross-bill seeking to prohibit Berry from entering their property without consent. The chancellor ruled for the Harvills on all counts. Subsequently, Berry made a verbal threat of a lawsuit to a construction crew hired by the Harvills to build the fence. Following this threat, the Harvills filed a petition seeking to hold Berry in contempt for violation of the original decree, and seeking a permanent injunction prohibiting Berry from interfering with their property in any way. The chancellor held Berry in contempt and granted the permanent injunction. Berry appealed this decision.
This Court, after carefully reviewing the record, held that Berry was not in contempt of the original injunction. 215 So.2d at 876. This Court noted that the only restraint placed upon Berry by injunction in the original decree was a prohibition from him entering the Harvills' land without their consent. Berry did not violate this provision, nor was he charged with having done so. However, this Court held that the chancellor in the second order was justified in enlarging the injunctive relief to the Harvills because Berry's words indicated a rebellious frame of mind. In dicta, this Court indicated that this decision should not be understood to imply that future interference by Berry with the erection of a fence by the Harvills would not come within the broader injunction and be punishable as contempt. 215 So.2d at 876.
In the instant case, the Busbins obtained an injunction directing the Dunaways to remove all obstructions from the right-of-way and thereafter "to leave the same open and clear for its intended use." The injunction was worded in language like that of the second Berry injunction. Dunaways' affirmative action of erecting a fence contravenes the August 7 injunction, just as this Court implied that Berry's interference with the Harvills' construction of a fence would violate the broad injunction issued by the chancellor in that case.
In the end the Dunaways confront established limitations upon our scope of review of trial court determinations which are essentially ones of fact. We have repeatedly refused to reverse a chancery court's finding of fact where there is any substantial credible evidence which supports it. See, e.g., Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). Put otherwise, the chancery court's findings must be allowed to stand unless manifest error is present and apparent. For present purposes, there are no disputed questions of evidentiary fact. The Dunaways knew of the terms of the decree, built the fence, the location, dimensions and effect of which are not contested.
The aforesaid limitation upon our scope of review, however, applies also to questions of ultimate fact. See, e.g., Gilchrist Machinery Company, Inc. v. Ross, 493 So.2d 1288, 1292 (Miss. 1986); Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). The question of ultimate fact at the core of this case is whether the fence unreasonably obstructed the Busbins' access to the right-of-way in violation of the injunction directed to the Dunaways that they "remove all obstructions" from the right-of-way and "keep and leave the same open and clear for its intended use." The Chancery Court found that the fence constituted an unreasonable obstruction. At no point along the 88 foot fence could the Busbins enter the right-of-way without either climbing over the fence or tearing it down. The only way that the Busbins could enter the north 88 feet of the right-of-way was by going off of their property and around the fence to the north, or through the wooden gate to the south. In view of these facts, we may only conclude that there is indeed substantial evidence supporting the Chancery Court's ultimate finding that the Dunaways have unreasonably obstructed the Busbins' access to the *1222 right-of-way and that the terms of the August 7, 1984, injunction had been violated.

IV.
We have reviewed the injunction and find that it advises the Dunaways in plain and simple language what it is that they were expected to do. See Rule 65(d), Miss.R.Civ.P.; Switzer v. Switzer, 460 So.2d 843, 846 (Miss. 1984); Hall v. Wood, 443 So.2d 834, 841-42 (Miss. 1983). The only other question of consequence is whether the Dunaways' conduct was sufficiently knowing so that it should be labeled contumacious, for it is indeed a defense to a contempt proceeding that the respondent was not guilty of wilful or deliberate violation of a prior judgment or a decree. See Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss. 1975); Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967).
The record before us reflects that the Dunaways were fully aware of the terms and provisions of the August 7, 1984, judgment, that they had read and reviewed the same. The construction of the fence was a deliberate act which any person of ordinary intelligence and prudence would have known would deny to the Busbins reasonable access to the north 88 feet of the right-of-way. The Chancery Court's finding of ultimate fact that the Dunaways' conduct was "wilful and contumacious and in violation of the terms of the aforesaid final order" is, accordingly, beyond our authority to disturb.

V.
The Dunaways present an assignment of error regarding an apparent second contempt citation. We are advised that, subsequent to the September 6, 1984, contempt adjudication, the Busbins tore down part of the fence and that the Dunaways promptly rebuilt it. This appears to have led to a second contempt proceeding brought by the Busbins on January 11, 1985. For present purposes, it is sufficient to note that the only matter which has been appealed in the premises is the September, 1984, contempt adjudication. Today's decision is wholly without prejudice to the purported January, 1985, contempt proceeding or any other proceedings with respect to the enforcement of the August 7, 1984, final judgment.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
*1223 
NOTES
[1] On this date the time within which the Dunaways may have asked for a rehearing of the August 7 judgment had expired. See Rule 59(b), Miss.R.Civ.P. The time within which the Dunaways might have appealed, however, had not run. Rule 48(b), Miss.Sup.Ct.Rules. No such appeal was ever perfected.