519 So.2d 1214 (1988)
Dennis GOOCH
v.
FARMERS MARKETING ASSOCIATION.
No. 57492.
Supreme Court of Mississippi.
February 3, 1988.
Omar D. Craig, Oxford, for appellant.
Phillip L. Tutor, Roberts & Tutor, Pontotoc, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Dennis Gooch appeals from a judgment entered in the Chancery Court of Pontotoc County in favor of Farmers Marketing Association in the sum of ten thousand six hundred dollars ($10,600), together with interest and costs. Appellant assigns three errors in the trial below, which follow:
I.
THE COURT ERRED IN HOLDING THAT THE CONTRACT WAS ENFORCEABLE, I.E., IN OVERRULING THE PLAINTIFF'S, DENNIS GOOCH, APPELLANT HERE, MOTION FOR SUMMARY JUDGMENT.

*1215 II.
THE LOWER COURT ERRED IN HOLDING THAT THE ALLEGED ORAL BOOKING CONTRACT, TELEPHONICALLY MADE, WAS NOT TELEPHONICALLY CANCELLED.
III.
THE LOWER COURT ERRED IN HOLDING THAT THE MEASURE OF DAMAGES WAS TWO AND 12/100THS ($2.12) DOLLARS PER BUSHEL RATHER THAN NINETY-NINE (.99) CENTS PER BUSHEL.
Appellee, Farmers Marketing Association (FMA), is a cooperative association in Pontotoc County engaged in the purchase and resale of soybeans, wheat, and milo. Appellant is a Pontotoc County farmer, has been a member of FMA since the 1970s, and has sold his produce to FMA on several occasions.
Sometime prior to February 14, 1983, appellant informed FMA's bookkeeper, Hampton, of his desire to book soybeans should the market price rise to $6.00 per bushel. "Booking" is an agreement whereby a farmer, e.g., appellant, contracts with FMA for future delivery of grain, usually produced by the farmer, and which obligates the farmer to deliver the amount booked. Booking may be done by a visit to the FMA office or by telephone. A booking contract is signed by the farmer when he books in person, but there is no signature where a booking is made by telephone. Generally, the contracts for telephoned bookings are signed later by the farmer, if he stops by the FMA office. Approximately ten percent (10%) of the telephoned contracts booked are never signed, but are performed nevertheless. FMA, as a general rule, immediately executes a futures contract to resell the booked produce to a larger purchaser.
In early February, bookkeeper Hampton telephoned appellant and advised him that soybeans were near the $6.00 per bushel mark. Appellant told Hampton to book 5,000 bushels of soybeans at $6.01 per bushel for October/November/December, 1983. Hampton filled out a "Contract for Future Delivery of Commodities" reciting these terms and dated it February 14, 1983. During the same telephone conversation, appellant also booked 3,000 bushels of wheat. The wheat was booked as two contracts, one dated February 10, and the other dated February 11. Appellant later signed the wheat contracts, but the soybean contract was never signed.
Appellant performed on the wheat contracts by the required July delivery date, but by late November there had been no performance on the soybean booking. On November 23, 1983, the president of FMA informed appellant by letter that, if performance was not had by December 31, 1983, then FMA would take legal action. Appellant had already sold his soybean crop to another buyer. When he failed to perform the contract by December 31, FMA covered the deficiency by purchasing 5,000 bushels of soybeans at $8.13 per bushel, which was $2.12 over the booking price on February 14, and which amounted to an overage of $10,600.00. Appellant denied the existence of the soybean contract, and on January 19, 1984, sued to enjoin FMA from enforcing or collecting on the contract. FMA counterclaimed for damages of $10,600, interest and costs.
Appellant's pretrial motion for summary judgment was denied. Subsequently, both parties joined in a motion to withdraw the request for injunction, and the case proceeded to trial on FMA's counterclaim alone. At trial, appellant admitted booking the soybeans by telephone in February, and he testified that in July, 1983, he contacted FMA to determine the status of his February soybean booking. He asked the FMA manager whether he had a contract, and the manager asked appellant "Do you want out?" Appellant replied, "Yes," and the manager said, "O.K."
The FMA manager testified that at no time did appellant express a desire to cancel the soybean booking and that appellant had performed unsigned contracts in the past. The FMA bookkeeper testified that in July appellant inquired as to how much it would cost to get out of his soybean *1216 contract; and when appellant discovered that it would take $5,000 to cancel, "[h]e just left it at that."
The chancellor found that the February telephone booking constituted a contract; that appellant was aware of the contract, inquired about what it would cost to get out on one occasion, but did not actually attempt by telephone, letter or otherwise to void the contract, even though he was in the FMA office on several occasions; that appellant had dealt with FMA for several years and that he had previously delivered on unsigned contracts. Accordingly, the chancellor entered judgment for FMA in the amount of $10,600 plus interest and costs.

I.
The appellant contends first that the lower court erred in holding that the oral contract for soybean booking was enforceable. He argues that the purported contract violates the Statute of Frauds, Section 75-2-201, because he did not sign the contract form. The section follows:
§ 75-2-201. Formal requirements; statute of frauds.
(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
* * * * * *
(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
* * * * * *
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; ....
Miss. Code Ann. § 75-2-201(1), (3)(b) (1972).
As noted above, subsection (3)(b) of § 75-2-201 provides that, notwithstanding a contract's failure to meet the requirements of subsection (1), it is enforceable, if the party against whom enforcement is sought admits in his pleadings, testimony, or otherwise in court that the contract was made. With reference to the lower court's denial of appellant's motion for summary judgment, in Franklin County Co-op v. MFC Services (AAL), 441 So.2d 1376 (Miss. 1983), the Court said that the non-moving party
might be able to obtain an admission by [the moving party] or one of its agents that a contract for sale was made.... In this regard, it is conceivable that [the non-moving party] could obtain testimony relating to the parties' course of dealing, if any, or the usage of trade observed in the filling of such [contracts]. This, then, is an alternative method which the [non-moving party] should be afforded the opportunity of utilizing to enforce the alleged contract and so constitutes an additional ground for ruling that the trial judge committed reversible error in sustaining [the moving party's] motion to dismiss....
441 So.2d at 1378 (Footnote omitted).
FMA stated a common-law action for breach of contract, and at trial, appellant admitted the February 14 booking by the following answer:
Q. But do you admit that you booked beans back in February at six o one, do you not, Mr. Gooch?
A. I called and told them to book at six o one; yes, sir.
Section 75-1-201(11) of the Uniform Commercial Code defines contract as "the total legal obligation which results from the parties' agreement as effected by this Code and any other applicable rules of law." Subsection (3) of the same statute defines agreement as: *1217 the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this code (sections 75-1-205 and 75-2-208). Whether an agreement has legal consequences is determined by the provisions of this code, if applicable; otherwise by the law of contracts (section 75-1-103).
Miss. Code Ann. § 75-1-201(3) (1972).
Under the Uniform Commercial Code, course of dealing is a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions or other conduct." Miss. Code Ann. § 75-1-205(1) (1972). Further, § 75-2-208(1) provides:
Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.
Miss. Code Ann. § 75-2-208(1) (1972).
The chancellor found that appellant had booked produce with FMA on four previous occasions and that two of these bookings involved contracts which appellant never signed; that appellant had inquired as to how much it would cost to cancel the February 14 soybean booking; and that appellant had successfully cancelled a prior contract with appellee. We conclude that appellant reasonably should have known that a booking by telephone resulted in a contract with FMA whether the contract form was signed by appellant or not, and that unless he took steps to cancel the contract, he was bound thereby. Appellant's cancellation of an earlier contract with FMA, together with his inquiry into possible cancellation of the contract presently in dispute, indicates appellant's knowledge of the course of performance of such bookings. Miss. Code Ann. § 75-2-208(1) (1972).
Therefore, we are of the opinion that the lower court was correct in holding that the booking created an enforceable contract.

II.
The appellant next contends that the lower court erred in holding that the purported oral booking contract, telephonically made, was not telephonically cancelled.
Appellant testified that he cancelled the contract by telephone in July, 1983. His wife, son, and five farmer friends testified that appellant told them that he had cancelled his contract. FMA's manager testified that appellant never attempted to cancel the contract; FMA's bookkeeper testified that appellant inquired about cancelling the contract but did nothing further; and the chancellor concluded that appellant "did not actually attempt by phone, letter or otherwise to void the contract, even though he was in the FMA office on several occasions."
It is an elementary principle of law that the chancellor, the trier of fact, cannot be disturbed on his findings of fact unless the Supreme Court can say with reasonable certainty that the findings were manifestly wrong. Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). See also Estate of Johnson v. Adkins, 513 So.2d 922 (Miss. 1987); Dunaway v. Busbin, 498 So.2d 1218 (Miss. 1986); Liddell v. Jones, 482 So.2d 1131 (Miss. 1986).
We reject the second assigned error of appellant.

III.
Appellant contends third that the lower court erred in holding the measure of damages was two dollars twelve cents ($2.12) per bushel rather than ninety-nine cents (.99) per bushel.
Mississippi Code Annotated § 75-2-713(1) (1972) defines the buyer's measure of damages for seller's failure to deliver.
Subject to the provisions of this chapter with respect to proof of market price (Section 2-723) [§ 75-2-723], the measure of damages for nondelivery or repudiation *1218 by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (Section 2-715) [§ 75-2-715], but less expenses saved in consequence of the seller's breach.
Miss. Code Ann. § 75-2-713(1) (1972).
Appellant argues that FMA learned of the breach, if any, on November 23, 1983, the date of appellee's letter requesting performance. The market price on that date would have yielded a contract/market price difference of 99 cents per bushel.
The chancellor expressly found that the controlling market price was that of December 31, 1983, yielding a contract/market price difference of $2.12 per bushel.
4 Anderson, Uniform Commercial Code, § 2-713.6, pp. 461-62 (1983) states:
The buyer has knowledge of the seller's breach for purposes of UCC § 2-713 when the buyer knows that the seller will not perform the contract even though the actual repudiation is not made until the later performance date had arrived, and consequently the plaintiff's damages are to be measured as of the earlier date of knowledge of non-performance.
The determination of the time when the buyer learns of the breach is for the trier of fact. In its letter of November 23, FMA stated its intent "to file suit in this matter if the contract is not filled completely not later than December 31, 1983.... If it is your desire to avoid this litigation and to fill the contract, please contact me [appellee's president] at your earliest convenience."
The above letter does not reflect knowledge by FMA of appellant's breach, but expresses a hope that the breach might be avoided. In addition, the contract specified October/November/December delivery. The last possible date for timely performance would have been December 31. On November 23, appellant still had over one month remaining to fill the contract. On December 31, appellee filled the contract elsewhere and incurred an additional cost of $2.12 per bushel.
We are of the opinion that the lower court was not manifestly wrong in its finding. Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978).
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.J., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, concur.