¶ 1. James (Jim) Mize appeals a Hinds County Chancery Court judgment of divorce awarding custody of the minor children to his former wife, Pam, and ordering Jim to pay rehabilitative alimony and Pam's attorney's fees. Jim presents the following assignments of error for resolution:
 I. a) Whether the Chancery Court committed manifest error in awarding the physical and legal custody of the minor children to Pamela Gail Owens Ford. *Page 602 
 b) Whether the Chancery Court's award of physical custody of the minor children to Pam was against the overwhelming weight of the evidence.
 II. Whether the Chancery Court abused its discretion and erred in awarding rehabilitative periodic alimony of $300 per month for a period of 60 months, taking into consideration the impact the total award which included lump sum alimony, child support, medical insurance for the children, and attorney's fees.
 III. Whether the Chancery Court abused its discretion and erred in requiring James Mize Ford (Jim) to pay $10,000 on Pam's attorney's fees.
Finding error, the judgment of the chancery court is affirmed in part and reversed and rendered in part.
 FACTS
¶ 2. Jim and Pam were married on May 1, 1982. During the marriage, Jim and Pam had two children, Amy Renee Ford, female, born August 9, 1983, and Samantha Gail Ford, female, born August 20, 1987. Jim filed for divorce on August 26, 1998. Pam filed an answer and cross-complaint. The parties eventually agreed to a divorce on the grounds of irreconcilable differences and the remaining issues regarding custody, support, property division and attorney's fees were submitted by agreement of the parties to the court for resolution. Those issues were tried on June 14 and 15, 1999, and on November 8, 1999.
¶ 3. In the judgment of divorce, the chancellor awarded the physical and legal custody of the parties' minor daughters to Pam and ordered Jim to pay child support in the amount of $250 per month per child, or $500 per month. Having determined that the marital estate was worth $145,930, exclusive of the marital debts, the chancellor ordered a division that gave 60%, or $87,558, to Jim and 40%, or $ 58,372, to Pam. As a credit against Pam's share of the marital estate, Pam was awarded the car, jewelry, the cash value of her insurance policy, and contents of the marital home. The total credit for these items was $28,320. Jim was ordered to pay the remaining portion of Pam's share of the marital estate, or $30,052, in 120 monthly installments of $356.72, bearing interest at 7.5 percent. Pam was also awarded lump sum alimony in the amount of $6,500, which equaled her share of the couple's debts. In lieu of paying to Pam the amount of lump sum alimony awarded, Jim was ordered to pay Pam's share of the marital debts. Since Jim had been living in the family home during the pendency of the divorce, he was ordered to immediately pay Pam $8,594 for her equity in the homestead. The judgment of divorce also adjudged that each party would pay his or her attorney.
¶ 4. Jim filed a motion for amendment of judgment or, in the alternative, a new trial pursuant to Rule 59 of Mississippi Rules of Civil Procedure. In his motion, Jim contended that most of the assets constituting the marital estate were illiquid; therefore, he did not have the funds available with which to make the cash payments. The chancellor granted the motion and modified his original judgment of divorce. In the "Order Granting the Amendment to Judgment," the chancellor deleted the provision requiring Jim to pay the $30,052, in 120 monthly installments of $356.72, bearing interest at 7.5 percent. Instead of awarding Pam the balance of her share of the marital estate to be paid in installment payments, the chancellor awarded Pam rehabilitative alimony in the sum of $300 per month for sixty months, for a total of $18,000 and ordered Jim to pay, within ninety days, the sum of $10,000 toward *Page 603 
Pam's attorney's fees. It is from this order that Jim has appealed.
 ANALYSIS OF ISSUES PRESENTED I. Custody Award
¶ 5. The standard of review in child custody cases is limited in that the chancellor must commit a manifest wrong, act in a way that is clearly erroneous, or apply an erroneous legal standard before this Court can reverse. M.C.M.J. v. C.E.J., 715 So.2d 774, 776 (Miss. 1998). Moreover, the chancellor's findings are not reversible unless evidence exists which shows that the decision was not supported by substantial credible evidence. Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss 1986). The factors that should be considered in making a child custody determination are set forth in Albright v. Albright, 437 So.2d 1003
(Miss. 1983), as follows:
 A. Age
 B. Health of child
 C. Sex of child
 D. Continuity of care
 E. Best parenting skills
 F. Willingness and capacity to provide primary care
 G. Parents's employment and responsibilities of such
 H. Physical and mental health and age of parents
 I. Emotional ties of parent and child
 J. Moral fitness of parents
 K. Home, school, and community record of child
 L. Preference of the child (at the age sufficient to express preference by law)
 M. Stability of home environment and employment of parents
Id. at 1005.
¶ 6. Jim argues that Pam was clearly unfit to have custody of the children and cites her refusal to submit to drug tests, her prior alcoholism, and the fact that she exposed her daughters to "marijuana use, a convicted prostitute, and a convicted drug dealer" as well as to an "illicit relationship," as support for his argument.
¶ 7. The chancellor applied the Albright factors and made very specific findings in making his determination that awarding custody to Pam was in the best interest of the children. The chancellor weighed the stability of home environment factor and moral fitness factor in favor of Jim at the time of the divorce but was satisfied that Pam would improve the stability of the home environment when her financial situation improved. Even though both Amy and Samantha were of an age to express their desire regarding custody, and both expressed a desire to live with Pam, the chancellor made an independent determination that the best parenting skills factor weighed in favor of Pam.
¶ 8. We are satisfied that the chancellor properly considered and applied the Albright factors and did not commit a manifest wrong, act erroneously, or apply the wrong legal standard in his decision to award custody of Amy and Samantha to Pam. Accordingly, his decision on this issue is affirmed.
 II. Rehabilitative Alimony
¶ 9. Jim argues that he has neither the liquid assets nor the income to support the award of alimony to Pam. Initially, the chancellor ordered Jim to pay Pam her share of the marital estate in 120 installments of $356.72 per month. When Jim objected in his Rule 59 motion that this was unfair because most of the estate was in a form that could not be liquidated, the court decided to revisit the award of alimony, and instead, awarded rehabilitative periodic alimony to Pam in the amount of $300 per month for a period of sixty *Page 604 
months. Jim claims that this award is still more than he can afford to pay and argues that the court failed to take into consideration his ability to pay alimony and maintain a decent standard of living.
¶ 10. A chancellor's decision will remain undisturbed on appeal so long as he commits no manifest error in his fact finding nor abuses his discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). Rehabilitative periodic alimony is an equitable tool used by the chancellor to allow a party needing assistance to become self-supporting without becoming destitute in the interim. Hubbard v. Hubbard,656 So.2d 124, 130 (Miss. 1995). When the court makes a determination on the award of alimony, it must consider the following:
 1. The income and expenses of the parties;
 2. The health and earning capacities of the parties;
 3. The needs of each party;
 4. The obligations and assets of each party;
 5. The length of the marriage;
 6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
 7. The age of the parties;
 8. The standard of living of the parties, both during the marriage and at the time of the support determination;
 9. The tax consequences of the spousal support order;
 10. Fault or misconduct;
 11. Wasteful dissipation of assets by either party;
 12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280.
¶ 11. In applying the Armstrong factors, the chancellor herein found that: (1) Pam and Jim were married for a reasonably long period, seventeen years, during which time Jim primarily earned the family's income while Pam made the home and cared for the children, (2) living separately had resulted in Pam's and the children's needs far exceeding Pam's ability to earn a living, (3) though healthy, Pam is not educated nor trained to earn a very substantial income and has limited work experience, and (4) Jim is an owner/participant in a number of businesses, has years of experience in the primary business he operates with his father, and is in good health.
¶ 12. The chancellor held that whereas he had previously found that "there did not exist enough income between the parties to require payment of alimony; however, having freed Jim from the necessity of paying Pam a sizeable portion of her entitlement in the marital estate in cash, it seems appropriate to revisit the question altogether." He went on to hold that Pam required temporary assistance in retraining herself and/or in obtaining sufficient work experience to become self-supporting, and thus, was entitled to rehabilitative periodic alimony.
¶ 13. We are satisfied that the award is supported by credible evidence and that the court was not manifestly wrong in awarding rehabilitative periodic alimony to Pam.
 III. Attorney's Fees
¶ 14. In the trial court's original opinion, the court found, on the issue of attorney's fees, "[t]he parties shall bear the expense of counsel respectively." Then, without the benefit of a motion from Pam *Page 605 
for a reconsideration of the attorney's fee issue, the chancellor reversed himself and included the following provision in its order on Jim's Rule 59 motion: "Pam is not able to pay her attorney and Jim be and is hereby required to pay to Pam as partial reimbursement for the expenses of her attorney the sum of $10,000, payable to her at the office of her attorney, Michael Marks, Esq., within ninety (90) days of the Final Judgment."
¶ 15. During the argument on Jim's motion to alter or amend the judgment, counsel for Pam said this to the court:
 What I want to comment on now, I felt the Court gave Mr. Ford a tremendous break in not awarding the attorney fees. When we lawyers who are over here before you a lot, Judge, take in these cases, we have to make a business judgment; and when we represent the wife or the person with much, much less income, we have to take a chance that there's an expectation of getting paid in this case. And I put in a terrific amount of hours in this case. We submitted our bill and, for reasons the Court felt was equitable, happened not to award attorney's fees. But when I made this business decision, of course, we estimated Mr. Ford's income and took in Mrs. Ford's income. As a matter of fact, I will probably end up working for free on this case or with what little funds her family could scrape together. She's promised to pay me some out of the moneys that the Court has awarded to her to try to get a new start with a house.
At that point, counsel for Jim objected as follows:
 MS. JOHNSON: Your Honor, I must object. There is no motion by Mrs. Ford that the Court was incorrect in its refusal to award attorney's fees but rather requires each party pay their own. If he's arguing this just as the totality of the award, the Court can take judicial notice of its judgment. And for that reason, we would object unless there is a motion before this Court, which there is not, of any error in the award of attorney's fees.
 MR. MARKS: I raise that in defense — in my third defense, Your Honor, unaffirmative [sic] defense, but I'll move along after having said that.
¶ 16. Jim argues that the trial court abused its discretion in requiring him to make this payment. We agree that Jim should not be required to pay the attorney's fees ordered by the trial judge. However, for reasons that we discuss below, we chose to characterize as void the chancellor's action in ordering the payment.
¶ 17. Under Rule 59, the court could, on its own initiative, enter an order granting a new trial within ten days of the final judgment. M.R.C.P. 59(d). Furthermore, while the rule does not specifically say so, we see no reason why the court could not also, on its own initiative, enter an order amending the judgment. However, the court would still be required to proceed within the confines of the rule which requires that it (1) act within ten days of the final judgment, (2) give notice to the parties, (3) give the parties an opportunity to be heard on the matter and (4) specify in the order the grounds therefor. Id. This was not done here. The initial judgment of divorce was entered on December 9, 1999. The amended order was entered on February 10, 2000. Therefore, we find that the chancellor had no authority to amend its earlier judgment as to the issue of attorney's fees, and his action in this respect is void. That portion of his judgment ordering Jim to pay a portion of Pam's attorney's fees is reversed and rendered. *Page 606 
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMEDIN PART AND REVERSED AND RENDERED IN PART. THE COSTS OF THIS APPEAL AREASSESSED TWO THIRDS TO THE APPELLANT AND ONE THIRD TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, LEE, MYERS,CHANDLER, JJ., CONCUR. THOMAS AND BRANTLEY, JJ., NOT PARTICIPATING.