KING, P.J.,
FOR THE COURT:
¶ 1. The Coahoma County Circuit Court granted summary judgment for the defendant, Magnolia Lady, Inc., d/b/a Lady Luck Rhythm and Blues Casino-Hotel (Lady Luck) in this contract action, holding that the parties’ agreements were of such an indefinite nature as to preclude finding valid contract formation and breach of contract. Scott has appealed *95 and set forth ten issues for this Court’s review. Finding them to be mutually inclusive, this Court has combined them, and states the issue as follows:
Whether the Circuit Court of Coaho-ma County committed error in holding that no contract had been formed, and accordingly granting summary judgment for the Lady Luck.
Finding no error, this Court affirms.
WHETHER THE CIRCUIT COURT OF COAHOMA COUNTY COMMITTED ERROR IN HOLDING THAT NO CONTRACT HAD BEEN FORMED, AND ACCORDINGLY GRANTING SUMMARY JUDGMENT FOR THE LADY LUCK.
FACTS
¶ 2. Beginning in late 1994 or early 1995, Creek Scott, d/b/a Classic Coach (Scott) began a business relationship with Lady Luck. The parties entered into a series of agreements, under which Scott would provide tour bus service to individuals who wished to gamble or secure hotel rooms at Lady Luck. This was done pursuant to a series of standard contracts, which only differed as to the number of rooms and the arrival and departure dates.
¶ 3. The contracts each required that Scott provide a deposit for the rooms. However, it became the practice of the parties to ignore several of the contract provisions, including the requirement of room deposit and the requirement that Scott sign and return the contracts to Lady Luck. As a practice, Scott never signed or returned the contracts, but merely maintained them in his files.
¶ 4. Under the practice followed by the parties, two or three days prior to the arrival of a tour bus, Scott would send Lady Luck a list of passengers, without a room deposit, and Lady Luck would hold the requested number of rooms. Even when Scott failed to fill the number of rooms for which he had contracted, Lady Luck did not enforce any of the penalty provisions of the contract or seek damages.
¶ 5. This pattern of business dealings continued until approximately February 1996, when Lady Luck became dissatisfied with Scott’s unilateral cancellations of bus tours and modifications of the number of rooms reserved. At that time Lady Luck wrote Scott and informed him that consistent with its “bus program” he would be required to execute written contracts and provide a deposit for each room reserved. Despite this notification, Scott continued to not execute written contracts or provide room deposits.
¶ 6. On May 5, 1997, Lady Luck wrote and informed Scott that it was enforcing a provision of the standard contract, which stated, “the agreement is tentative and subject to withdrawal until receipt by hotel of signed contract and deposit.” This provision was included in all of the contracts sent to Scott before and after February 1996, when Lady Luck informed Scott of its “bus program.” As a part of the May 5, 1997 notice, Lady Luck withdrew approximately sixty contract offers extended between September 5 and 10,1996, for bus tours during the period June through December of 1997.
¶ 7. On April 9, 1998, Scott initiated this breach of contract action, claiming to have relied on his past course of business dealings with Lady Luck.
¶ 8. The circuit court granted Lady Luck’s motion for summary judgment, characterizing the relationship between the parties as an agreement to agree to agree in the future, unsupported by any consideration.
*96 ¶ 9. Scott asks this Court to find reversible error in the trial court’s holding that no contract existed between Scott and Lady Luck. The formation of a contract, either oral or written, requires (1) an offer, (2) acceptance of the offer, and (3) consideration. Krebs v. Strange, 419 So.2d 178, 181 (Miss.1982).
¶ 10. There can be no question that Lady Luck extended to Scott an offer to contract. This was done by the submission to Scott for approval and signature approximately sixty separate written documents. It is equally beyond question that Scott failed to execute any of the approximately sixty separate written documents under which Lady Luck offered to do business with Scott.
¶ 11. Scott argues that valid and enforceable contracts existed, notwithstanding his failure to execute any of the proposed contracts. He suggests that the parties were obligated to continue the past course of conduct, under which Scott never signed any written contracts and never paid any room deposits. Contrary to Scott’s argument, there is no authority in the law to preclude a party to past contracts from altering the terms and conditions of future contracts. However, courts have found the existence of a valid contract, where one party, to his detriment, relied on an established course of business dealings. Gooch v. Farmers Marketing Ass’n, 519 So.2d 1214, 1217 (Miss.1988). To avoid such a claim, the party seeking to alter the established course of dealings must clearly and timely indicate the intent to alter the established pattern of conduct. Id. This Lady Luck did when it wrote to Scott in February 1996, and informed him of its “bus program” which required, that he (1) execute written contracts, and (2) pay room deposits.
¶ 12. Each tour represented a new and separate contract, and the notice of February 1996 was sufficient to put Scott on notice that Lady Luck declined to do business under the old practices. Scott could accept or reject the offer extended by Lady Luck. There is no evidence of any such acceptance in the record. Nor, is there evidence that Scott, by written document or actions, extended to Lady Luck a counter offer, which, by written document or actions, was accepted by Lady Luck. Scott cannot unilaterally create a contract by altering the terms of Lady Luck’s offer. Hunt v. Coker, 741 So.2d 1011(¶ 9) (Miss.Ct.App.1999).
¶ 13. Giving Scott the benefit of the doubt, as this Court is required to do, it clearly appears that no contract came into being between Scott and Lady Luck. In the absence of a contract there can be no breach.
¶ 14. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and GRIFFIS, JJ., CONCUR.