CARLTON, J.,
dissenting:
¶22. I respectfully dissent from the majority’s opinion. I submit that the chancellor erred by failing to make a finding regarding the final accounting of Estes’s estate before reducing the gross estate by the widow’s allowance and the expenses of the estate. However, I find no evidence in the record that the chancellor abused his discretion in awarding Young a $12,000 widow’s allowance or in determining the date-of-death value of Young’s *1229 property. Therefore, I would reverse the chancery court’s judgment in part and affirm in part.
¶ 23. The record reflects that Estes died testate on May 18, 2007, making no provision in his will for his widow, Young. Young renounced the will and sought one year’s support, otherwise known as a widow’s allowance. The chancery court granted Young a one-fifth share of the estate and a widow’s allowance. The co-executors of the estate now appeal, arguing: (1) Young was not entitled to a widow’s allowance; (2) the chancery court erred in valuing Young’s property; and (3) and the chancery court prematurely apportioned the estate prior to a final accounting.
¶ 24. Young renounced the will and filed a petition to appoint appraisers and for one year’s support and a petition for exclusive possession of the marital home, homestead property, and exempt property. On February 9, 2009, the chancery court issued an order appointing three commissioners to hire an appraiser to conduct an appraisal of Estes’s estate and the date-of-death value of Young’s property. The commissioners filed their report, and the co-executors filed an objection to the report, arguing that the commissioners improperly valued Estes’s real property and Young’s personal and real property. After a hearing on September 8, 2010, the chancery court denied the objection of the co-executors and confirmed the report. The chancery court stated that the co-executors were allowed to retain an expert to appraise Young’s separate property, as long as it was completed and filed in a timely manner. The co-executors filed their expert’s appraisal of Estes’s estate on April 13, 2011. The expert’s appraisal did not contain a valuation of Young’s property.
¶ 25. On June 22, 2011, the chancery court issued an order reaffirming the valuation provided in the commissioners’ report, rejecting the appraisal of the co-executor’s expert, and ruling that Young was entitled to $70,427.63 — representing her one-fifth share of Estes’s estate. The court also awarded her $12,000 as a widow’s allowance.
¶ 26. On August 31, 2011, the chancery court issued an order correcting the prior judgment and reducing the value of Estes’s estate by the $12,000 widow’s allowance prior to apportioning the estate to Young. The court then adjusted Young’s one-fifth interest to reflect that deduction, reducing her share to $68,927.63. Young was to receive a total of $80,927.63, which included her widow’s allowance. Additionally, the court denied Young’s motion for exclusive possession of the marital home, homestead property, and exempt property.
I. WIDOW’S ALLOWANCE
¶ 27. Before turning to the issue of the widow’s allowance, I must preface my discussion by recognizing that a chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. Consol. Pipe & Supply Co. v. Cotter, 735 So.2d 958, 961 (¶ 13) (Miss.1999). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss. 2002) (citations omitted).
¶ 28. The record reflects that the chancery court granted Young a widow’s allowance of $12,000 under Mississippi Code Annotated section 91-7-135 (Rev.2004). This section empowers the chancery court to apportion the one year’s allowance “necessary for the comfortable support of the spouse and children, or spouse or children[.]” Id. The co-executors challenge *1230 the $12,000 allotment on the grounds that Young and Estes were separated at the time of Estes’s death and that Young was not supported by Estes at the time of his death.
¶ 29. A widow’s allowance is considered to be “a matter of right whatever may be the condition of the estate, and the application therefor [is] a matter with which the administrator has no concern.” Harwell v. Woody, 206 Miss. 863, 868, 41 So.2d 35, 36 (1949) (quoting Morgan v. Morgan, 36 Miss. 348, 350 (1858)) (internal quotations omitted). The Mississippi Supreme Court has held that an administrator’s opposition to a widow’s allowance “is not contemplated by the statute, and should not be tolerated .... ” Morgan, 36 Miss, at 350. Permitting the administrator to challenge the allowance would be counter to the reason behind the statute, which is to give immediate support to widows, widowers, and children. Id. Litigation of this support would delay the allowance, “depriving the parties of the humane provisions of the law at the very time when they [stand] most in need of it.” Id.
¶ 30. The co-executors argue on appeal that Young is not entitled to an allowance, because the husband’s duty to support the wife “is coupled with reciprocal obligations upon the wife to perform her duty imposed by such marital relations.” Byars v. Gholson, 147 Miss. 460, 465, 112 So. 578, 579 (1927). Accordingly, because Young had moved from the marital home by her own free will and had relinquished all her marital obligations, she was not entitled to support in the form of a widow’s allowance.
¶ 31. The chancery court heard testimony of Young’s failure to perform her marital obligations and heard the argument that under Byars, Young was not entitled to a widow’s allowance. However, there is no evidence in the record that the chancellor abused his discretion or was clearly erroneous. Therefore, I find no error in the chancellor’s award of a $12,000 widow’s allowance to Young.
II. DATE-OF-DEATH VALUE OF YOUNG’S PROPERTY
¶ 32. The commissioners submitted their report on the appraisal of Estes’s estate and the date-of-death value of Young’s property, and the chancery court confirmed the report, denying the objections raised by the co-executors. However, the court gave the co-executors the opportunity to retain a separate appraiser to assess Young’s property. The co-executors were directed that the report should be conducted and filed with the clerk of the court within a reasonable time from the October 11, 2010 hearing.
¶ 33. On December 17, 2010, Young filed a statement notifying the court that neither she nor her attorney had received any notification that the co-executors had retained an expert. The co-executors filed their expert’s appraisal of Estes’s estate on April 13, 2011. The appraisal did not contain a valuation of Young’s property.
¶ 34. The chancery court held a hearing on April 26, 2011, and noted that the co-executors never requested that Young allow their appraiser to inspect her personal property; therefore, the appraisal of the date-of-death value of Young’s property was never performed. The chancellor also stated from the bench that it was inherently unfair for the co-executors to wait until the day the estate was set to close to attest that Young possessed property of significant value, which the co-executors attempted to do at the April 26 hearing.
¶ 35. The co-executors were given every opportunity to provide supporting evidence for their objections to the special commissioners’ reported appraisal of *1231 Young’s property. They failed to do so in a timely manner.
¶ 36. Accordingly, I find that the chancery court did not err in confirming the special commissioners’ report. The co-executors failed to comply with the court’s directive allowing their appraiser to value Young’s property. Because the chancery court did not err in determining the date-of-death value of Young’s property, I would therefore affirm the chancery court’s judgment in part as to this issue.
III. APPORTIONMENT OF THE ESTATE
¶ 87. Young renounced the will and was granted a one-fifth share of the estate under Mississippi Code Annotated section 91-5-25 (Rev.2004). The co-executors do not raise the issue of Young’s right to renounce the will and receive a one-fifth share. Because it was not raised, I will not address the issue.
¶ 38. The co-executors contend that the trial court erred when it apportioned the estate into one-fifth shares prior to deducting the estate’s debts from the gross estate. Young does not respond to this issue in her brief. If the appellee fails to address an issue in her brief, and the appellants brief clearly shows that the trial court erred, this Court is not obligated to search the record on the appellee’s behalf in order to counter or subvert the appellant’s argument. Westinghouse Credit Corp. v. Deposit Guar. Nat’l Bank, 304 So.2d 636, 637 (Miss.1974).
¶ 39. To determine the estate to be divided among the heirs, the chancery court must first ascertain the gross value of the estate. And from that value, the chancellor must deduct the “debts of the decedent, administrative expenses[,] and funeral expenses!,] leaving the net value of decedent’s estate.” Banks v. Junk, 264 So.2d 387, 392 (Miss.1972); see also In re Estate of Hollaway, 631 So.2d 127, 137 (Miss.1993).
¶ 40. The special commissioners reported the value of Estes’s estate to be $555,561.41 and the date-of-death value of Young’s property to be $39,990.65. The chancellor then divided Estes’s estate by five, apportioning it equally to Young and the four children, which came to $111,112.28. Additionally, the court subtracted the value of Young’s property from her one-fifth share and reduced the share further by $694 for her proportionate share of the fees from the special commissioners and the appraiser, making Young’s share $70,427.63.
¶41. The co-executors moved for the court to reconsider the judgment, arguing in part that if Young were to be granted a widow’s allowance, then the allowance should have been subtracted from the value of Estes’s estate prior to dividing it among the heirs. The co-executors also asserted that although the final accounting for the estate had not been filed at that time, certain expenses such as taxes and funeral expenses should have been paid from the estate before Young’s share was apportioned.
¶ 42. On August 31, 2011, the court altered its prior judgment, deducting the widow’s allowance from Estes’s estate pri- or to division into one-fifth shares. Young’s share was reduced from $70,427.63 to $68,927.63 ($555,561.41 - 12,000 = $543,561.41 / 5 = $108,712.28 - $39,990.65 = $68,721.63). Including her widow’s allowance, the estate was ordered to pay Young a total of $80,927.63. Clearly, the math is incorrect. The judgment amount is $206 greater than the mathematically accurate amount. Additionally, the August 31 judgment does not reduce Young’s award by the $694 amount of fees subtracted in the June 22 judgment. In- *1232 eluding the fees the correct judgment should be for $68,027.63 plus the $12,000 widow’s allowance, totaling $80,027.63.
¶ 43. Both the June 22, 2011 judgment and the August 31, 2011 corrected judgment use the special commissioners’ estate valuation of $555,561.41. Although $4,985 in funeral expenses were included in that valuation, a final accounting of the estate was not conducted in compliance with Mississippi Code Annotated section 91-7-291 (Rev.2004).
¶ 44. The co-executors moved for a continuance to give them time to file a petition for a final accounting and for the chancery court to have a hearing on the matter. The chancery court did not respond to the co-executors’ request. The co-executors should have been given leave to file a petition for a final accounting within a reasonable time period. Then, the chancery court should have determined if any remaining debts of the estate should be reduced from the gross estate prior to dividing the estate into one-fifth shares.
¶ 45. I find that the chancery court was premature in apportioning Estes’s estate. The court should have made a finding regarding the final accounting of the estate before reducing the gross estate by the widow’s allowance and the expenses of the estate. Therefore, I would reverse the chancery court’s judgment in part and remand this issue to the chancery court for findings consistent with this opinion.